**Frederick BURTON, Plaintiff,**

v.

**Michael SHEAHAN, Sheriff of Cook County, Defendant.**

**No. 98 C 5614.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 22, 1999.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiff.

James Joseph Jozefowicz, Cook County State's Attorney, Chicago, IL, for defendant.

### MEMORANDUM OPINION
### AND ORDER

MOODY, District Judge.

Before the court is defendant Michael Sheahan's ("Sheahan") motion to dismiss plaintiff Frederick Burton's ("Burton") complaint for failure to state a claim under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). In his complaint, Burton, a correctional officer, attempts to state a claim under 42 U.S.C. § 1983 against Michael Sheahan in his official capacity as Sheriff of Cook County for the deprivation of Burton's property without due process of law.

For the following reasons, Sheahan's motion to dismiss is **DENIED.**

### 1. Factual Background

The following facts alleged in the complaint are presumed true for purposes of this motion to dismiss. In September, 1995, Sheahan, Cook County Sheriff, ordered that Burton be suspended without pay pending proceedings against Burton before the Sheriff's Merit Board. Eighteen months later, in March, 1997, the Sheriff's Merit Board suspended Burton for 120 days. Thereafter, Sheahan refused both to pay Burton his backpay and to restore Burton to his original seniority date for the 18–month period prior to the Merit Board's determination. Burton is now in federal court claiming deprivation of his right to due process under the Fourteenth Amendment to the United States Constitution and seeking restoration of his backpay and seniority status.

### 2. Standard of Review: Motion to Dismiss for Failure to State a Claim under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Lying at the heart of this court's difficulty with Sheahan's motion to dismiss Burton's complaint is the Seventh Circuit's lack of consistent guidance in its review of cases involving dismissals for failure to state a claim. In one line of cases, the Seventh Circuit has stated that it adheres to the traditional standard on a motion to dismiss for failure to state a claim, pursuant to which this court accepts as true all well-pleaded factual allegations of the complaint and draws all reasonable inferences therefrom in the light most favorable to the plaintiff. *See New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474 (7th Cir.1990). This court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Consistent with this approach, the Seventh Circuit indicated in *Bartholet v. Reishauer*

*A.G.* that "[a] drafter who lacks a legal theory is likely to bungle the complaint (and the trial); you need a theory to decide which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet,* 953 F.2d 1073, 1078 (7th Cir.1992). Two years later, in *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994), the court again made it clear that:

> Any need to plead facts that, if true, establish each element of a "cause of action" was abolished by the Rules of Civil Procedure in 1938, which to signify the radical change from code pleading also replaced "cause of action" with "claim for relief." One pleads a "claim for relief" by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint. Matching facts against legal elements comes later.

And more recently, in *Albiero v. City of Kankakee,* the court addressed a common "pair of misconceptions" surrounding what facts must be alleged in a complaint in order to survive a motion to dismiss:

> One is that a complaint must set out, and that its validity depends on, a legal theory, such as "due process" or "equal protection." That is not so: matching facts to a legal theory was an aspect of code pleading interred in 1938 with the adoption of the Rules of Civil Procedure. A complaint must narrate a *claim,* which means a grievance such as "the City violated my rights by preventing me from renovating my apartments." Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint. The other misconception is that a complaint must allege all of the facts essential to recovery under the plaintiff's legal theory. Some states, including Illinois, use fact pleading to this day, but federal courts took a different path

59 years ago. A complaint may not be dismissed unless it is impossible to prevail "under any set of facts that could be proved consistent with the allegations." *Albiero v. City of Kankakee,* 122 F.3d 417, 419 (7th Cir.1997) (internal citations omitted). In the specific context of a § 1983 suit, as in the present case, the Supreme Court has also consistently rejected the imposition of a heightened pleading standard. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). This court believes this traditional notice pleading standard to be the correct standard for two reasons. First, this standard is faithful to the minimal federal notice pleading standard embodied in the Federal Rules. Second, this standard makes it less likely that meritorious claims will be dismissed prematurely.

The problem, of course, lies in the fact that this court can also cite several examples from another line of Seventh Circuit cases which seem to indicate that there are circumstances other than those required under RULE 9 in which a heightened standard of pleading is required. For instance, in *Palda v. General Dynamics Corp.,* 47 F.3d 872, 874–75 (7th Cir.1995), the court stated:

> To state a claim for breach of the contract ... [plaintiff] must plead sufficient facts and allege the existence of three elements.... [Plaintiff] must plead all three elements; the failure to plead the existence of any of these elements renders his complaint deficient.... A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).

And most recently, in *Ryan v. Mary Immaculate Queen Ctr.,* 188 F.3d 857, 859 (7th Cir.1999) (internal citations omitted), the court articulated the conflict as follows:

> The tricky issue presented by the appeal is whether the district court was right to hold that the complaint did not adequately allege Weiser's involvement in the October 23 search.... All the complaint says about him in relation to it is that he "conspired" with the other defendants. The question is whether this allegation, either by itself or in combination with the fact that Weiser is alleged to have conducted the search that took place two days later, is enough to satisfy the liberal pleading standards of the Federal Rules of Civil Procedure, standards that we now know federal judges are not authorized to tighten up for civil rights cases.... So the question comes down to whether the bare allegation that a defendant conspired with other defendants whose unlawful acts are adequately alleged satisfies Rule 8 as to that defendant. We think not. It is true that all the federal rules require of a complaint is that it put the defendant on notice of plaintiff's claim; but notice implies some minimum description of the defendant's complained-of conduct. The purpose of this requirement is less to give the defendant enough information to begin to prepare a defense—if truly puzzled, he could always serve a contention interrogatory on the plaintiff—than to allow the court to determine at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not the case can be got rid of immediately without clogging the court's docket and imposing needless expense on the defendant.

To further complicate matters, not only is there a conflict regarding the degree of scrutiny with which a district court in the Seventh Circuit should analyze the adequacy of a complaint on a motion to dismiss, but it is equally unclear whether a district judge is required to make that adequacy determination based solely on the complaint, or whether the judge may look to surrounding pleadings as well. In 1995 in *Palda,* for instance, the court noted that "[i]n reviewing a district court's dismissal of a complaint, however, we will not look beyond the four corners of the com-

plaint itself to determine whether Palda can state a claim and we have already noted that Palda does not plead any facts to support his conclusory allegations." *Palda*, 47 F.3d at 875. But two years later, in *Albiero*, the court stated:

> A complaint may not be dismissed unless it is impossible to prevail "under any set of facts that could be proved consistent with the allegations." That is why we have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief. If the extra assertions *make out a claim*, then the *complaint* stands. Plaintiffs' memorandum opposing defendants' motion to dismiss contained assertions that led the judge to spot a potential equal protection theory. Given *Conley* and its successors, the judge should have accepted those statements and moved forward; dismissing the complaint with leave to replead extra facts was inconsistent with the federal rules and set the stage for the jurisdictional problem we now confront.

*Albiero*, 122 F.3d at 419 (internal citations omitted) (emphasis added).

In light of the foregoing discussion, and absent any clearer guidance from the Seventh Circuit, this court finds that the better practice is to adhere to the more traditional standard of federal notice pleading, pursuant to which this court will not dismiss a complaint for failure to state a claim if there is any set of facts which, if proven, would entitle the plaintiff to relief. That is not to say, however, that this court will make plaintiff's case for him when he files a complaint that is insufficient to state a claim by scouring his collective pleadings for some tenable basis of suit; rather, on a motion to dismiss, this court will look only to the four corners of the complaint in order to determine whether plaintiff has stated a claim.

So what then is sufficient to state a claim for deprivation of procedural due process under this standard in this circuit? It has long been established that in order to state a claim for a deprivation of proce-

dural due process, the plaintiff must, at an indispensable minimum, allege facts which present a challenge to some procedure which occasioned the complained-of deprivation. Here, the "procedure" Burton is challenging is apparently Sheahan's decision not to restore Burton's backpay or seniority. Because a claim against a municipal officer in his official capacity is a claim against the municipality, *see Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997) ("An official capacity claim against an individual defendant constitutes a claim against the government entity itself"), and because a municipality cannot be held liable save for actions taken pursuant to an official custom or policy, *see Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Burton is not entitled to relief unless Sheahan's decision was made pursuant to an official custom or policy. This of course begs the dispositive question posed in the third Seventh Circuit conflict of this discussion: must a plaintiff *allege* the custom or policy which occasioned the deprivation on the face of the complaint or may he just challenge the deprivation as resulting from a municipal officer's decision? In this vein, the Seventh Circuit issued two directly conflicting statements in the year between 1994 and 1995.

In 1994, in *Ex rel. Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728 (7th Cir.1994), the Seventh Circuit held that the district court was correct in dismissing a § 1983 complaint against an elementary school principal sued in his official capacity, a county school corporation, and a county department of public welfare because the complaint failed to explicitly allege the existence of a custom or policy responsible for the complained-of deprivation. On appeal, plaintiffs first argued that by alleging that Ray Azar was the principal of Lost Creek Elementary School, they had sufficiently pleaded the existence of a policy or custom because that allegation should have been sufficient for the court to infer that Azar was a person with "final policymaking authority," one way of proving the

existence of an official policy or custom. The court disagreed, stating:

> Assuming that paragraph two of the complaint alleges that Chelsie was subjected by Azar to unfair grades and racism, and taking as true the allegation in paragraph four that Chelsie was deprived of free speech rights, the complaint still lacks an allegation that Mr. Azar was in a position to make final policy, or any policy for that matter. The Baxters' attorney asserted at oral argument that even a single instance of unconstitutional conduct can establish a policy. It is true that a single act or decision of a final policymaker can establish municipal policy. A necessary corollary of this point, however, is that it *must first be alleged adequately that a defendant is a final policymaker. Only then can a court proceed to the question of whether the single act or decision of that defendant constituted municipal policy.*

*Id.* at 735 (internal citations omitted) (emphasis added). As the Baxters' complaint was "simply devoid of any such allegation," *id.,* the district court properly dismissed the complaint against Azar. Here, as in *Baxter,* plaintiff fails to allege that the individual he is suing "in his official capacity" had any authority to make any policy whatsoever, and has alleged only that a single decision of that individual violated plaintiff's constitutional rights. Under *Baxter,* then, it would seem that this court has no choice in the present case but to dismiss plaintiff's complaint for failure to state a claim.

Returning again to *Baxter,* the court next considered the propriety of the district court's dismissal in light of the Baxters' alternative argument that they had successfully pleaded that policies or customs of the school corporation were responsible for the deprivation. Affirming the district court's finding that the complaint was inadequate on this ground as well, the court stated:

> "Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does

exist, are insufficient." ... The rest of the complaint does nothing to overcome these shortcomings. Paragraph five states in substance that Azar carried out the policies of the VCSC, but it fails to identify those policies. Rather, the paragraph proceeds to assert that the carrying out of these unidentified policies deprived Chelsie of various constitutional rights.... Indeed, even reading the paragraphs in conjunction with each other, we can discern *no sufficiently specific allegation of a policy or custom.*

*Id.* at 736 (internal citations omitted) (emphasis added). The Baxters' complaint against the Vigo County Department of Public Welfare met a similar fate, as the court stated:

> For the VCDPW to remain as a defendant, the Baxters would have to allege some sort of policy or custom, for which the VCDPW is responsible, that caused a violation of the Baxters' or Chelsie's constitutional rights.... The complaint does not sufficiently allege any policy or custom on the part of the VCDPW.

*Id.*

The next year, in *Jackson v. Marion County,* 66 F.3d 151 (7th Cir.1995), the Seventh Circuit again addressed the propriety of the district court's dismissal of a section 1983 complaint, this time for failure to state a claim for deprivation of procedural due process. The district court had dismissed the complaint—properly, it would seem under *Baxter*—on the ground that there was "no explicit allegation of a custom or policy, but only an allegation of an isolated instance of misconduct." *Jackson,* 66 F.3d at 152. On appeal, however, the Seventh Circuit, after distinguishing *Baxter* by affirming that "when, as in *Baxter,* the complaint names an official in his official capacity ... without a clue as to what the authority of the office is or what policy of the office the plaintiff believes violated his rights, the suit is properly dismissed on the pleadings," reversed the district court's dismissal of the complaint for failure to state a claim. The court held

that the dismissal was reversible error because "a plaintiff in a suit in federal court need not plead facts; he can plead conclusions," and, as a result, plaintiff *need not allege* the existence of any policy or custom. Pursuant to *Jackson,* then, it would appear as though Burton's extremely shoddy and conclusory complaint, unsupported by any allegation of the existence of an official policy or custom, would be sufficient to state a claim.

Finally, in a more recent, unpublished opinion excerpted here solely for the sake of illustrating that *Baxter* was evidently not an aberration, the Seventh Circuit, in an apparent reversion to its *Baxter* position, held that the failure to allege the existence of a policy or custom was again fatal to the complaint on a motion to dismiss, stating:

> Because Henderson's claim against Sheahan in his official capacity is really a claim against the Cook County Sheriff's Department, he must assert some factual basis to suggest that the CCDOC records department maintains an express policy of denying its inmates the right to vote; that its practice of denying voting rights, though unauthorized or unwritten, is "so widespread as to have the force of law;" or that Sheahan, "a person with final policymaking authority," made "a deliberate choice" to deny the inmates' right to vote, that is, he knew of and condoned the constitutional deprivation *or acted with deliberate indifference to it,* "turn[ing] a blind eye for fear of what [he] might see." Henderson's voting rights complaint against CCDOC or Sheahan cannot survive a motion to dismiss. The only incident that Henderson has alleged concerning the existence of a CCDOC records department policy or custom affecting the voting rights of prisoners is that his own status as a pre-trial detainee was not properly recorded. This falls woefully short of the *showing necessary to suggest a CCDOC policy or custom.* Even the most liberal construction of Henderson's pro se complaint does not suggest that this in-

cident was anything other than the "isolated independent tort of an individual employee."

*Henderson v. Sheahan,* 134 F.3d 374, 1997 WL 819832, at *1–2 (7th Cir. Dec.29, 1997) (internal citations omitted) (emphasis added).

■ After a lengthy examination of the Seventh Circuit's conflicting precedent, the court is left to conclude that its attempts to reconcile *Baxter* with *Leatherman* and its progeny have been in vain. The court concludes that, in the face of such diametrically opposed positions, the better practice is not to require plaintiffs either to explicitly articulate on the face of the complaint the existence of an official custom or policy, or to explicitly allege on the face of the complaint that the custom or policy is responsible for the deprivation; rather, the court will henceforth make a determination whether, construing the facts and all inferences therefrom in the light most favorable to the plaintiff, the plaintiff has alleged sufficient facts from which the court can reasonably conclude that the plaintiff is *entitled to prove* the existence of an official custom or policy. With that in mind, the court now turns to the complaint at hand.

### 3. Analysis

In his complaint, Burton does not specify whether the "due process" of which he was allegedly deprived is procedural due process or substantive due process. The court will therefore briefly dispose of substantive due process, and then turn to procedural due process.

### a. Substantive Due Process

■ The Seventh Circuit has set out a two-part test for determining whether a plaintiff has stated a claim for a violation of substantive due process. First, a plaintiff must allege that the government official's decision was arbitrary and irrational; and second, a plaintiff must allege either that state remedies are inadequate or that they are unconstitutional. *See New Burn-*

*ham,* 910 F.2d at 1481. Ordinarily, however, a threshold requirement exists before applying this two-part test—namely, plaintiff must first have made an allegation that he has been denied some constitutionally-protected property or liberty interest. Here, Burton alleges only that he has been "deprived of property," which he defines as his backpay and seniority. Whether Burton in fact has a constitutionally-protected property right in his backpay and seniority is a preliminary question of law which must be resolved before this court will apply the Seventh Circuit's two-part test.

▮ Property rights are derived not from the constitution, but rather from state law. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The law here properly in issue states, in relevant part, "No ... county corrections officer and no employee in the County Department of Corrections shall be removed, demoted or suspended except for cause...." 55 ILL. COMP. STAT. 5/3–7012 (West 1999). In other words, Burton has a constitutionally-protected property interest in employment by virtue of the fact that he can only be dismissed or suspended for cause. Suspending without pay a correctional officer who has a constitutionally-protected property interest in employment deprives that officer of his property interest, because "a deprivation of constitutional dimensions occurs when the state stops the flow of benefits associated with a protected interest for any appreciable length of time." *D'Acquisto v. Washington,* 640 F.Supp. 594, 609 (N.D.Ill. 1986). Therefore, this court finds that Burton has sufficiently alleged a constitutionally-protected property interest.

▮ In this case, however, Burton is precluded from litigating that interest in this court because this court sits in the Seventh Circuit, and it is well documented that the Seventh Circuit does not recognize a substantive due process claim as a means by which plaintiffs may litigate property rights conferred solely by statute. "In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." *Kauth v. Hartford Ins. Co. of Ill.,* 852 F.2d 951, 958 (7th Cir.1988). The court therefore need not address Burton's failure to meet the Seventh Circuit's two-part test for stating a substantive due process claim, as Burton has failed to satisfy even the threshold requirement for stating such a claim.

**b. Procedural Due Process**

The indispensable hallmark of a procedural due process claim is some challenge to the procedures by which a plaintiff was deprived of property. Though this court is loathe to do plaintiff's attorney's work for him, the court finds that under a principled application of what this court today determines is the correct standard, pursuant to which Burton need only allege facts from which this court could reasonably conclude that Burton is entitled to prove facts which, if true, would establish the existence of an official custom or policy, Burton's complaint is sufficient to withstand Sheahan's motion to dismiss.

▮ Municipal liability, as discussed above, attaches only where the action causing the deprivation was taken pursuant to an official policy. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There are several ways to prove the existence of an official policy, only one of which appears to be immediately relevant. Municipal liability attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Here, by alleging that Sheahan is the Sheriff of Cook County, Burton has pleaded a suffi-

**982**

cient fact from which this court could reasonably conclude that Burton is entitled to prove a set of facts that would, if true, establish that Sheahan is a person with final policymaking authority.

In his motion to dismiss, Sheahan alleges that this court must dismiss Burton's complaint for two reasons. First, Sheahan argues that under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and its progeny, Burton must allege that state law remedies are inadequate. Alternatively, Sheahan maintains that, "assuming Burton had alleged an actionable due process claim" (which itself belies Sheahan's assertion that Burton has failed to state a claim), Sheahan cannot be held liable under § 1983 unless Burton can prove that Sheahan acted pursuant to an official custom or policy, and since Burton has not explicitly alleged that Sheahan acted pursuant to an official policy or custom, Burton's complaint must be dismissed.

■■■■■ Regarding Sheahan's first argument, it may be true that Burton must prove that his state law remedies are inadequate in order to win his lawsuit. As this is not a motion for summary judgment, however, Burton need not allege on the face of his complaint any more than what was articulated earlier in this discussion. As to his second argument, Sheahan mischaracterizes the holding of *Parratt* and when that holding applies. In short, the Supreme Court in *Parratt* held that there is no liability for a deprivation of procedural due process if a state remedy exists which adequately supplies the procedures that are necessary to remedy the deprivation. However, *Parratt* does not apply, and a plaintiff need not prove that state law remedies are inadequate, if the harm resulted from an official governmental policy or if the plaintiff is objecting to the failure to provide an adequate post-deprivation remedy. Here, the court has already noted that the allegations in the complaint are sufficient to allow this court to infer, on a motion to dismiss, that Burton is entitled to prove a set of facts which would establish that the harm here resulted from an

official governmental policy. Again, as this is not a motion for summary judgment, Burton need not allege more than what was previously discussed.

**4. Conclusion**

To sum up, the court first finds that the correct standard in evaluating a complaint on a motion to dismiss is the traditional notice pleading standard articulated above. Second, the court finds that this standard must be satisfied solely within the four corners of the complaint. This court thinks it disingenuous to say that a complaint is insufficient to state a claim, but the court will look outside the complaint in order to determine whether the complaint is sufficient to state a claim. Under this standard, the minimum required to state a claim for violation of procedural due process sufficient to survive a motion to dismiss is a challenge to some procedure by which the complained-of deprivation occurred.

Applying these findings to the facts at hand, this court can infer from the face of his complaint that the "procedure" Burton is challenging is Sheahan's "decisionmaking." A claim against Sheahan for a deprivation occasioned by a decision he made in his official capacity as Cook County Sheriff is actually a claim against the municipality for which he works. A municipality cannot be held liable for a deprivation of procedural due process unless the deprivation was the result of an official policy or custom. One way to prove the existence of an official custom or policy is to demonstrate that the decisionmaker is a person with final policymaking authority. The court finds that Burton need not explicitly articulate the existence of any official custom or policy; rather, it is sufficient to allege facts from which this court could reasonably conclude that Burton is entitled to prove facts which, if true, would establish that someone with final policymaking authority, such as the Cook County Sheriff,

made a decision which in turn caused the complained-of deprivation.

As a result of the traditional pleading standards the court believes to exist in this circuit, and as a result of the conflict surrounding the requirements for stating a § 1983 claim, it may appear as though this court today has gone too far in allowing an entirely vacuous complaint to survive to the next stage of these proceedings. It is important to keep in mind, however, the purpose of a motion to dismiss; the court does not mean to suggest any opinion as to whether Burton would be able to prevail on summary judgment. And as federal constitutional cases go, the court candidly does not think this is one. It is with great reluctance that this court concedes that a plaintiff is successfully able to make a federal case out of this kind of deprivation. Indeed, the court believes that cases such as these are the first step in litigants' seemingly endless attempts to "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Parratt,* 451 U.S. at 544, 101 S.Ct. 1908.

Nevertheless, under a principled application of the standards that the court believes exist in this circuit for evaluating a complaint for failure to state a claim, for the foregoing reasons, Sheahan's motion to dismiss Burton's complaint pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) is **DENIED.**